SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal Bar No. 168646
ccardon@sheppardmullin.com
JAY T. RAMSEY, Cal Bar No. 273160
jramsey@sheppardmullin.com
ALYSSA SONES, Cal Bar No. 318359
asones@sheppardmullin.com
KEVIN M. MURPHY, Cal Bar No. 346041
kemurphy@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:    310.228.3700
Facsimile:    310.228.3701

*Attorneys for Defendants*
LEMONAID HEALTH INC. and LMND
MEDICAL GROUP, INC., d/b/a LEMONAID
HEALTH, a California Professional Corporation

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.J., H.G, L.V, M.M. and M.I., individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>       v.<br><br>LEMONAID HEALTH INC. and LMND MEDICAL GROUP, INC., d/b/a LEMONAID HEALTH, a California Professional Corporation,<br><br>              Defendants. | Case No. 3:23-cv-03288-RFL<br><br>**CLASS ACTION**<br><br>*Hon. Rita F. Lin*<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>Date: October 1, 2024<br>Time: 10:00 a.m.<br>Courtroom 15 – 18th floor |

SMRH:4883-3921-7877.10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE ABOVE CAPTIONED COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 1, 2024, at 10:00 a.m. or as soon thereafter as this matter may be heard, in Courtroom 15 of the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Rita F. Lin of the United States District Court for the Northern District of California presiding, Defendants Lemonaid Health Inc. and LMND Medical Group, Inc., d/b/a Lemonaid Health, a California Professional Corporation (collectively "Defendants" or "Lemonaid") will, and hereby do, move the Court for an order dismissing Plaintiff A.J., L.V., H.G., M.M., and M.I.'s Third Amended Class Action Complaint in its entirety.

This Motion is made on the grounds that Plaintiffs' fail to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6) as to all causes of action.  This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the records in this action, and such further evidence and argument that may be presented at the hearing of this Motion and that the Court may consider.

Dated: August 23, 2024                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                                          By: _____
                                                        */s/ Jay T. Ramsey*
                                                      P. CRAIG CARDON
                                                      JAY T. RAMSEY
                                                      ALYSSA SONES
                                                      KEVIN M. MURPHY

                                                  *Attorneys for Defendants*
                                          LEMONAID HEALTH INC. and LMND MEDICAL
                                          GROUP, INC., d/b/a LEMONAID HEALTH, a California
                                          Professional Corporation

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ........................................................................................................ 1

II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTES OF LIMITATIONS ........... 1

III.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR ADDITIONAL
       REASONS ................................................................................................................. 4

       A.     Plaintiffs' Claims Based On Unidentified "Other Tracking Technologies"
              Must Be Dismissed ........................................................................................ 4

       B.     Plaintiffs' Claims Under The ECPA Fail Because The Crime-Tort Exception
              Does Not Apply .............................................................................................. 5

       C.     Plaintiffs' CIPA And CMIA Claims Must Be Dismissed Because Plaintiffs
              Are Not California Residents ......................................................................... 6

       D.     Plaintiffs' Claims Under CIPA Fail For Other Reasons ................................ 9

       E.     Plaintiffs' Claims Under The Consumer Protection Statutes Fail .............. 12

       F.     Plaintiffs' Common-Law Claims Fail ......................................................... 12

              1.     Plaintiffs' Negligence Claims Should Be Dismissed ...................... 12

              2.     Plaintiffs' Breach Of Fiduciary Duty Claims Should Be Dismissed ............. 13

              3.     Plaintiff L.V.'s Breach Of Confidence Claims Should Be Dismissed ........... 15

              4.     Plaintiffs' Unjust Enrichment Claims Should Be Dismissed ......................... 15

IV.    CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Hosp. Ass'n v. Becerra*
No. 4:23-CV-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024) ................................... 5

*In re Ambry Genetics Data Breach Litig.*
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ................................................................ 14

*Auburn Univ. v. Int'l Bus. Machines, Corp.*
716 F. Supp. 2d 1114 (M.D. Ala. 2010) ................................................................ 2

*Brodsky v. Apple Inc.*
445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................ 2

*Cimoli v. Alacer Corp.*
587 F. Supp. 3d 978 (N.D. Cal. 2022) ................................................................ 7

*Destiny Tool v. SGS Tools Co.*
344 F. App'x 320 (9th Cir. 2009) ................................................................ 7

*Doe v. Kaiser Foundation Health Plan, Inc.*
No. 23-cv-02865, 2024 WL 1589982 (N.D. Cal. April 11, 2024) ............................... 6, 7, 8, 9

*Doe v. Meta Platforms, Inc.*
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ................................................................ 9

*Forcellati v. Hyland's, Inc.*
876 F. Supp. 2d 1155 (C.D. Cal. 2012) ................................................................ 9

*Gutierrez v. Converse Inc.*
No. CV 23-6547, 2024 WL 3511648 (C.D. Cal. July 12, 2024) ............................... 10, 11

*Javier v. Assurance IQ LLC*
649 F. Supp. 3d 891 (N.D. Cal. 2023) ................................................................ 2, 3

*Katz-Lacabe v. Oracle Am., Inc.*
No. 22-cv-04792, 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) ............................... 6

*In re LastPass Data Sec. Incident Litig.*
No. CV 22-12047, 2024 WL 3580646 (D. Mass. July 30, 2024) ............................... 14

*Licea v. Cinmar, LLC*
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ................................................................ 10

*Mazza v. Am. Honda Motor Co.*
666 F.3d 581 (9th Cir. 2012) ................................................................ 7, 9

*In re Meta Pixel Healthcare Litig.*
   647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................................. 6

*Planned Parenthood Fed'n of Am., Inc. v. Newman*
   51 F.4th 1125 (9th Cir. 2022) ............................................................................... 5

*Sussman v. ABC*
   186 F.3d 1200 (9th Cir. 1999) .............................................................................. 5

*Swarts v. Home Depot, Inc.*
   No. 23-CV-0995, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) .................... 9, 11

*Tomasella v. Nestlé USA, Inc.*
   962 F.3d 60 (1st Cir. 2020) ................................................................................ 12

*Vander Salm v. Bailin & Assocs., Inc.*
   No. CIV.A. 11-40180-TSH, 2014 WL 1117017 (D. Mass. Mar. 18, 2014) ............ 2

*Williams v. What If Holdings, LLC*
   No. C 22-03780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....................... 10

*In re Yahoo Mail Litig.*
   308 F.R.D. 577 (N.D. Cal. 2015) ...................................................................... 7, 8

**State Cases**

*Aliant Bank, a Div. of USAmeribank v. Four Star Invs., Inc.*
   244 So. 3d 896 (Ala. 2017) ................................................................................. 2

*Bush v. Ford Life Ins. Co.*
   682 So. 2d 46 (Ala. 1996) ................................................................................... 2

*Butler v. Butler*
   239 N.C. App. 1 (2015) ..................................................................................... 15

*CommScope Credit Union v. Butler & Burke, Ltd. Liab. P'ship*
   369 N.C. 48 (2016) ........................................................................................... 14

*Fox v. Ethicon Endo-Surgery, Inc.*
   35 Cal. 4th 797 (2005) ..................................................................................... 2, 3

*Genisman v. Carley*
   29 Cal. App. 5th 45 (2018) .................................................................................. 3

*Gunter v. Huddle*
   724 So. 2d 544 (Ala. Civ. App. 1998) ............................................................... 14

*Hamilton v. Scott*
   97 So. 3d 728 (Ala. 2012) ................................................................................. 13

*Helfman v. Ne. Univ.*
  485 Mass. 308 (2020)...................................................................................13

*Ingem, Inc. v. Dial Info. Servs., Inc.*
  103 N.E.3d 1241 (Mass. App. Ct. 2018)..................................................2

*Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*
  327 N.C. 283 (1990)........................................................................13

*Jolly v. Eli Lilly & Co.*
  44 Cal. 3d 1103 (1988).......................................................................2

*Kearney v. Salomon Smith Barney, Inc.*
  39 Cal. 4th 95 (2006)........................................................................8

*McKelvey v. Boeing North American, Inc.*
  74 Cal. App. 4th 151 (1999)...............................................................2

*Menefee v. Ostawari*
  228 Cal. App. 3d 239 (1991)..............................................................2

*Musselwhite v. Cheshire*
  266 N.C. App. 166 (2019)................................................................13

*Norgart v. Upjohn Co.*
  21 Cal. 4th 383 (1999).......................................................................3

*Rich v. Rich*
  No. BRCV200701538, 2011 WL 3672059 (Mass. Super. July 8, 2011)..................2

*Taggart v. Costabile*
  131 A.D.3d 243 (2015)....................................................................13

*Tocci v. Holland & Knight, LLP*
  194 N.E.3d 694 (Mass. App. Ct. 2022).................................................2

**Federal: Statutes, Rules, Regulations, Constitutional Provisions**

18 U.S.C. § 2520 .................................................................................2

18 U.S.C.§ 2511 ...............................................................................5, 6

**State: Statutes, Rules, Regulations, Constitutional Provisions**

Ala. Code § 13A-11-31 .......................................................................8

Cal. Civ. Code § 56.35 .......................................................................8

Cal. Penal Code § 631(a)............................................................9, 10, 11

Cal. Penal Code § 637.2 ......................................................................8

Mass. Gen. Laws Ann. Chapter 272, § 99 ........................................................................ 8

N.C. Gen. Stat. § 15A-287 ............................................................................................... 8

N.Y. Penal Law § 250.00 ................................................................................................. 8

**<u>Other Authorities</u>**

Seyfarth, *50-State Survey of Health Care Information Privacy Laws*,
    https://www.seyfarth.com/a/web/bhRXWBkMif111KfVwiQN6V/50-state-survey-of-
    health-care-information-privacy-laws-2023-2024-edition.pdf................................. 9

## I.    <u>INTRODUCTION</u>

In Lemonaid's[1] prior motion to dismiss, it explained at length its business, how its Website operates, and the nature of Plaintiffs' claims. Lemonaid incorporates that discussion here. In short, Plaintiffs allege that Lemonaid installed "tracking pixels" on its Website, lemonaidhealth.com, and those "tracking pixels" collected information about Plaintiffs' visits and transmitted that information to Facebook and Google, including information about medical conditions that Plaintiffs purportedly researched. (Third Amended Complaint ["TAC"] ¶¶, 1-6, 10.)

On July 3, 2024, the Court dismissed Plaintiffs' Second Amended Complaint, with leave to amend, and Plaintiffs filed the TAC thereafter. In this Motion, Lemonaid explains why the TAC should also be dismissed. As set forth below, the pleading deficiencies identified in the Court's prior Order were not fixed in the TAC and, to the contrary, many of the new allegations in the TAC only confirm that the claims should be dismissed. In addition, the new allegations raise arguments that Lemonaid could not present or fully develop before because of the length of Plaintiffs' pleading and the unfocused nature of its claims. To be clear, for the reasons stated below, <u>all</u> ten causes of action asserted by Plaintiffs[2] should be dismissed. Further, given that Plaintiffs have now had four chances to state their claims, the Court should dismiss this case with prejudice.

## II.    <u>PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTES OF LIMITATIONS</u>

In its prior motion to dismiss, Lemonaid demonstrated that Plaintiffs' claims are time-barred on their face. In response, Plaintiffs invoked the delayed discovery rule, claiming that the statutes of limitation were tolled. The Court dismissed Plaintiffs' claims because Plaintiffs did not plead "the 'time and manner' in which they discovered their claims," and thus could not invoke the discovery

---

[1] Defendants Lemonaid Health, Inc. and LMND Medical Group, Inc. are referred to collectively as "Lemonaid." Plaintiffs A.J., H.G., L.V., M.M., and M.I. are referred to as "Plaintiffs." Other capitalized terms have the same meaning as in the prior motion to dismiss.

[2] In the TAC, Plaintiffs assert ten causes of action. All Plaintiffs allege claims for negligence, unjust enrichment, and violations of the Electronic Communications Privacy Act ("ECPA"), California Invasion of Privacy Act ("CIPA"), California Confidentiality of Medical Information Act ("CMIA"). All Plaintiffs, except L.V., allege breach of fiduciary duty. Plaintiff L.V. additionally alleges claims for breach of confidence and violation of the New York General Business Law § 349 ("NYGBL"). And Plaintiffs M.M. and M.I. additionally allege claims for violation of the Massachusetts Consumer Protection Act ("Chapter 93A") and Massachusetts Wiretapping Statute ("MWS").

1  rule.  (Dkt. 49, at 5.)  In the TAC, Plaintiffs attempt to cure this deficiency, but their allegations only

2  confirm that their claims are time-barred and not subject to tolling.[3]

3      "A plaintiff whose complaint shows on its face that his claim would be barred without the

4  benefit of the discovery rule must specifically plead facts to show (1) the time and manner of

5  discovery and (2) the inability to have made earlier discovery despite reasonable diligence."

6  *McKelvey v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (1999).  If a plaintiff satisfies

7  these two elements, the statute of limitations does not begin to run until the plaintiff has "inquiry

8  notice of the cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005).  "A

9  plaintiff has inquiry notice 'when the plaintiff suspects or should suspect that her injury was caused

10  by wrongdoing, that someone has done something wrong to her."  *Javier v. Assurance IQ LLC*, 649

11  F. Supp. 3d 891, 901 (N.D. Cal. 2023) (Breyer, J.) (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103,

12  1110 (1988)).  Importantly, to be on inquiry notice, a plaintiff need not know the "facts supporting

13  each specific legal element of a particular cause of action."  *Fox*, 35 Cal. 4th at 807.  Nor does a

14  plaintiff need to know, or even "have reason to suspect," the identity of the wrongdoers.  *Id.*

15      Here, Plaintiffs allege that they did not discover that Lemonaid collected and shared their

16  Private Information until years after visiting the Website—when they contacted their counsel in

17  April 2023 (for Plaintiffs M.M. and M.I.) and October 2023 (for Plaintiffs A.J. and L.V.).  (TAC ¶¶

18

19  _____

20  [3] In its prior Motion, Lemonaid set forth the applicable limitations period.  Specifically, Plaintiffs' CMIA and CIPA claims have a one-year statute of limitations.  *Menefee v. Ostawari*, 228 Cal. App. 3d 239, 243 (1991) (CMIA); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 138 (N.D. Cal. 2020) (CIPA).  Plaintiffs' ECPA claim has a two-year statute of limitations.  18. U.S.C. § 2520(e). Plaintiff A.J.'s Alabama common-law claims for negligence, breach of fiduciary duty, and unjust enrichment have a two-year statute of limitations.  *Bush v. Ford Life Ins. Co.*, 682 So. 2d 46, 47 (Ala. 1996) (negligence); *Aliant Bank, a Div. of USAmeribank v. Four Star Invs., Inc.*, 244 So. 3d 896, 914 (Ala. 2017) (breach of fiduciary duty); *Auburn Univ. v. Int'l Bus. Machines, Corp.*, 716 F. Supp. 2d 1114, 1118 (M.D. Ala. 2010) (unjust enrichment).  Plaintiff M.M. and M.I.'s Massachusetts common-law claims for negligence, breach of fiduciary duty, and unjust enrichment, along with their statutory MWS claim, have a three-year statute of limitations.  *Vander Salm v. Bailin & Assocs., Inc.*, No. CIV.A. 11-40180-TSH, 2014 WL 1117017, at *6 (D. Mass. Mar. 18, 2014) (negligence); *Tocci v. Holland & Knight, LLP*, 194 N.E.3d 694 (Mass. App. Ct. 2022) (breach of fiduciary duty); *Ingem, Inc. v. Dial Info. Servs.*, Inc., 103 N.E.3d 1241 (Mass. App. Ct. 2018) (unjust enrichment); *Rich v. Rich*, No. BRCV200701538, 2011 WL 3672059, at *6 (Mass. Super. July 8, 2011) (MWS).  And their Chapter 93A claim has a four-year statute of limitations.  *Ingem, Inc.*, 103 N.E.3d 1241.

53, 71, 79, 85, 238.)  Plaintiffs allege that they "had no way of knowing" that their Private Information had been intercepted and shared because Lemonaid "kept this information secret."  (*Id.* ¶ 237.)  But Plaintiffs' new allegations in the TAC confirm that they were on inquiry notice shortly after they visited the Website.  According to Plaintiffs, "*immediately*" after visiting the Website they "began seeing targeted health ads."  (*Id.* ¶¶ 27, 52, 68, 76, 84.)  Plaintiffs allege that the health ads caused them "significant mental distress" based on the implication that advertisers were aware of their medical conditions, and the fear that their "friends, family, or colleagues might see these advertisements" and thereby learn of their medical conditions.  (*Id.* ¶¶ 55, 71, 79, 87.)  Accepting Plaintiffs' allegations as true, they were aware of their injuries immediately after visiting the Website, when they first saw targeted health ads for the same medical conditions that they researched on the Website.  At that point, they had "reason to . . . suspect that a type of wrongdoing ha[d] injured them," and, as a result, had a "duty to investigate further." *Fox*, 35 Cal. 4th at 807; *Genisman v. Carley*, 29 Cal. App. 5th 45, 51 (2018).  But Plaintiffs did not investigate; instead, they waited years to contact their counsel.  *See Fox*, 35 Cal. 4th at 808 (explaining that for the delayed discovery rule to apply, "the court places the burden on the plaintiff to show diligence").  Because Plaintiffs were, by their own admission, aware of their alleged injuries immediately after visiting the Website, and because Plaintiffs chose to "sit on [their] rights" rather than investigate, the delayed discovery rule does not apply. *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 398, (1999).  As a result, the statute of limitations began to run shortly after Plaintiffs visited the Website.

To the extent Plaintiffs argue that they were not on inquiry notice because they did not know, or could not have learned, the technical details of how Lemonaid allegedly collected and shared their information with third parties, or even identities of the parties involved (i.e., Facebook and Google), that is of no matter for purposes of inquiry notice.  "[U]nder the delayed discovery doctrine, knowledge of *injury*, not knowledge of a particular defendant's role in the injury, triggers inquiry notice." *Javier*, 649 F. Supp. 3d at 901 (emphasis in original).  Plaintiffs need only know that there was some "wrongdoing, causation, and harm," which as explained, they knew shortly after visiting the Website. *Fox*, 35 Cal. 4th at 807.

1    In sum, Plaintiffs were on inquiry notice.  They cannot allege, on the one hand, that they had

2  no reason to suspect wrongdoing until years after visiting the Website, but, on the other hand, allege

3  that they suffered significant mental distress immediately after visiting the Website.  Accordingly,

4  the following claims must be dismissed because Plaintiffs filed suit after the statute of limitations:

| Plaintiff | Inquiry Notice | Date Filed Suit | Duration Between Notice and Filing | Time-barred Claims |
|-----------|---------------|-----------------|-----------------------------------|---------------------|
| A.J. (Ala.) | May 2018 | October 2023 | 5 years, 5 months | Negligence (2 years) Fiduciary Duty (2 years) Unjust Enrichment (2 years) ECPA (2 years) CIPA (1 year) CMIA (1 year) |
| L.V. (N.Y.) | May 2021 | October 2023 | 2 years, 5 months | ECPA (2 years) CIPA (1 year) CMIA (1 year) |
| M.M. (Mass.) | 2019 | June 2023 | 4 years | Negligence (3 years) Fiduciary Duty (3 years) Unjust Enrichment (3 years) ECPA (2 years) CIPA (1 year) CMIA (1 year) Chapter 93A (4 years) MWS (3 years) |
| M.I. (Mass.) | Spring 2020 | June 2023 | Over 3 years | Negligence (3 years) Fiduciary Duty (3 years) Unjust Enrichment (3 years) ECPA (2 years) CIPA (1 year) CMIA (1 year) MWS (3 years) |

III.    **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR ADDITIONAL REASONS**

   A.    **Plaintiffs' Claims Based On Unidentified "Other Tracking Technologies" Must Be Dismissed**

In dismissing the SAC, the Court held that Plaintiffs had failed to allege sufficient facts to

1  premise their claims on Conversions API, explaining that "Plaintiffs' claims concerning the

2  Conversions API do not allege facts as to how the interception happens, whether it happens in real-

3  time, or whether Lemonaid in fact used Conversions API."  (Dkt. 49, at 5.)  In the TAC, Plaintiffs

4  have dropped their Conversions API allegations, but have added allegations based on "similar

5  tracking technologies" or "other tracking technologies."  (TAC ¶¶ 5, 13.)  For the same reasons that

6  the Court dismissed Plaintiffs' Conversions API allegations, the Court should dismiss Plaintiffs'

7  "other tracking technologies" allegations.  Plaintiffs do not identify these tracking technologies,

8  allege how these tracking technologies work, or if Lemonaid even used them.  Indeed, the only

9  tracking technologies that Plaintiffs identify are the Facebook Pixel and Google Source Code.

10  (TAC ¶¶ 114, 128.)  Any claims based on other, un-named technologies, should be dismissed.[4]

11  **B.    Plaintiffs' Claims Under The ECPA Fail Because The Crime-Tort Exception**

12  **Does Not Apply**

13          As a party to the communications at issue (*E.g.*, TAC ¶ 49), Plaintiffs cannot assert that

14  Lemonaid violated the ECPA unless the crime-tort exception applies.  *See* 18 U.S.C. § 2511(2)(D).

15  Under the crime-tort exception, Plaintiffs must sufficiently allege Lemonaid configured the

16  Facebook and Google pixels to intercept their communications "for the purpose committing a[]

17  criminal or tortious act."  *Id.*  To fall within the crime-tort exception, the "criminal or tortious

18  purpose must be separate and independent from the [interception]."  *Planned Parenthood Fed'n of*

19  *Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022); *Sussman v. ABC*, 186 F.3d 1200, 1202-

20

21

22  _____

23  [4] The Department of Health and Human Services' ("HHS") Office of Civil Rights ("OCR")
previously stated in a guidance document that HIPAA applied to the collection of a website visitor's
IP address on an unauthenticated public webpage (a webpage that does not require the visitor to

24  login first) when the webpage addressed specific health conditions.  Plaintiffs' Second Amended
Complaint contained allegations regarding the guidance document.  (Dkt. 34 ¶¶167-175.)  Recently,

25  the Northern District of Texas vacated a portion of the guidance document, holding that HHS
(through OCR) exceeded its authority in promulgating the guidance document because HIPAA did

26  not apply to the collection of IP addresses on unauthenticated public webpages. *Am. Hosp. Ass'n v.*
*Becerra*, No. 4:23-CV-01110-P, 2024 WL 3075865, at *1 (N.D. Tex. June 20, 2024).  Accordingly,

27  Plaintiffs have dropped many of the allegations related to the guidance document in the TAC.  But,
to the extent Plaintiffs still allege that Lemonaid collected Plaintiffs' IP address on unauthenticated

28  webpages, such allegations do not demonstrate a violation of law.

1   03 (9th Cir. 1999) ("[T]he focus is not upon whether the interception itself violated another law; it is

2   upon whether the purpose for the interception—its intended use—was criminal or tortious.").

3          In the TAC, based on allegations not previously included (TAC ¶¶ 312-322), Plaintiffs allege

4   that the crime-tort exception applies because Lemonaid intercepted their communications in order to

5   (1) invade Plaintiffs' privacy and (2) make money.  (TAC ¶¶ 306-307, 311, 316.)  But neither

6   allegation establishes that the crime-tort exception applies.  First, an invasion of privacy cannot be

7   the crime or tort because it is not independent of the interception.  *See Doe v. Kaiser Foundation*

8   *Health Plan, Inc.*, No. 23-cv-02865, 2024 WL 1589982, at *10 (N.D. Cal. April 11, 2024) (holding

9   that the crime-tort exception did not apply where plaintiffs alleged that the defendant intercepted

10  their communications to violate HIPAA because the "act of interception itself" was the basis for the

11  HIPAA violation, not some other independent reason).  Plaintiffs have not alleged that Lemonaid

12  violated their privacy other than by permitting Facebook and Google to intercept their Private

13  Information.  Second, numerous courts have held that where the purpose of an interception is to

14  increase revenue or profits, the crime-tort exception does not apply.  *See In re Meta Pixel*

15  *Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (Orrick, J.) ("Multiple courts in this

16  district have found that the crime-tort exception . . . is inapplicable where the defendant's primary

17  motivation was to make money, not to injure plaintiffs tortiously."); *Katz-Lacabe v. Oracle Am.,*

18  *Inc.*, No. 22-cv-04792, 2024 WL 1471299, at *3 (N.D. Cal. Apr. 3, 2024) (Seeborg, J.) ("Plaintiffs

19  fail plausibly to allege Oracle's underlying motivation in collecting and selling data about internet

20  users was anything other than to generate revenue.").  Thus, Plaintiffs' allegation that Lemonaid

21  configured Facebook and Google's pixels to intercept their communications for the purpose of

22  increasing its profits does not establish a criminal or tortious purpose.  As a result, the crime-tort

23  exception does not apply, and Plaintiffs' claim must be dismissed.  *See* 18 U.S.C. § 2511(2)(d).

24       **C.    Plaintiffs' CIPA And CMIA Claims Must Be Dismissed Because Plaintiffs Are**

25              **Not California Residents**

26          Plaintiffs are all non-California residents.  Yet, they assert violations of CIPA and CMIA,

27  two California statutes.  Plaintiffs can assert CIPA and CMIA claims only if, after conducting a

28  choice-of-law analysis, the Court concludes that California has a greater interest in the application

1    of its law, as opposed to the law of Plaintiffs' home states. For the reasons explained below, the

2    Court should not permit Plaintiffs to assert a CIPA or CMIA claim.

3            Where, as here, non-California plaintiffs assert claims under California law in federal court,

4    courts apply "the choice-of-law rules of the forum state" to determine "which state's law should

5    actually govern"— the forum state or the plaintiffs' home state. *Destiny Tool v. SGS Tools Co.*, 344

6    F. App'x 320, 321 (9th Cir. 2009); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602 (N.D. Cal. 2015)

7    (Koh, J.); *Kaiser*, 2024 WL 1589982, at *12. Here, the forum state is California; thus, the Court

8    must apply California's "governmental interest test."[5] *Mazza v. Am. Honda Motor Co.*, 666 F.3d

9    581, 589 (9th Cir. 2012). Courts regularly apply the governmental interest test at the pleading stage.

10   *See, e.g.*, *Cimoli v. Alacer Corp.*, 587 F. Supp. 3d 978, 986 (N.D. Cal. 2022) (Freeman, J.) (granting

11   defendant's motion to dismiss plaintiff's Pennsylvania state-law claim based on choice-of-law

12   analysis). Directly relevant to this case, Judge Chen recently held, based on a choice-of-law

13   analysis, that "***only a California Plaintiff can bring a CIPA [or CMIA] claim***." *Kaiser*, 2024 WL

14   1589982, at *13, 25.

15           In *Kaiser*, non-California plaintiffs alleged that Kaiser, a California entity, violated CIPA

16   and CMIA by using third-party code on its website to intercept a website visitor's health

17   information. *Id.* Kaiser argued that, under choice-of-law principles, the non-California plaintiffs

18   could not assert a CIPA or CMIA claim because the interests of the plaintiffs' home states

19   "outweigh[ed] California's interest in having its own law applied." *Id.* at *12. Judge Chen agreed.

20   Applying the governmental interest test, Judge Chen first held that there were "material differences

21   between CIPA and the wiretapping statutes of the other 49 states." *Id.* Second, Judge Chen

22   reasoned that "a true conflict exist[ed]" between California law and the law of the plaintiffs' home

23

24   ───────────────
     [5] The governmental interest test has three steps. "First, the court determines whether the relevant
25   law of each of the potentially affected jurisdictions with regard to the particular issue in question is
     the same or different. Second, if there is a difference, the court examines each jurisdiction's interest
26   in the application of its own law under the circumstances of the particular case to determine whether
     a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and
27   compares the nature and strength of the interest of each jurisdiction in the application of its own law
     to determine which state's interest would be more impaired if its policy were subordinated to the
28   policy of the other state, and then ultimately applies the law of the state whose interest would be
     more impaired if its law were not applied." *Mazza*, 666 F.3d at 590.

states because each jurisdiction had "an interest in the application of its own law." *Id.* Finally, Judge Chen held that the plaintiffs' home states "would be more impaired" than California if the court applied California law. *Id.* On this, Judge Chen explained that California did not have a predominant interest in applying its law "simply because Kaiser is based in California and allegedly aided and abetted third parties from the state." *Id.* at *13. Rather, "the residences of the [plaintiffs were] more important" because "wiretapping statutes are designed to protect the privacy interests of individual members." *Id.* Accordingly, Judge Chen held that the non-California plaintiffs could not assert a CIPA claim. *Id.* Judge Chen later applied this same reasoning to the CMIA. *Id.* at *25.[6]

Here, following *Kaiser*, Plaintiffs cannot assert a CIPA or CMIA claim. First, like the plaintiffs in *Kaiser*, Plaintiffs are not California residents. (TAC ¶¶ 48, 56, 64, 72, 80.) Second, as demonstrated in *Kaiser*, there are material differences between CIPA and CMIA, on the one hand, and the laws of Plaintiffs' home states, on the other hand. For example, unlike CIPA, Alabama, New York, and North Carolina's wiretapping statutes require only single-party consent. *See* Ala. Code § 13A-11-31; N.Y. Penal Law § 250.00; N.C. Gen. Stat. § 15A-287. And Massachusetts' wiretapping law permits a moving party to recover attorney fees while CIPA does not. *Compare* Mass. Gen. Laws Ann. ch. 272, § 99 *with* Cal. Penal Code § 637.2. The same is true for the CMIA. CMIA provides that an injured party can receive compensatory damages, punitive damages, attorneys' fees, and costs of litigation. *See* Cal. Civ. Code § 56.35. Plaintiffs' home states do not

---

[6] Judge Chen's holding tracks the California Supreme Court's decision in *Kearney v. Salomon Smith Barney, Inc.,* 39 Cal. 4th 95 (2006). There, plaintiffs were California citizens and they engaged in telephone conversations from California with the defendant's representatives, who were located in Georgia. Unbeknownst to the plaintiffs, the representatives in Georgia recorded their telephone calls. The Court, applying a choice of law analysis to CIPA, held that *California* plaintiffs could allege a CIPA claim against a foreign defendant even though the party that recorded the call was located outside of California. *Id.* at 99-100. The court emphasized that one of the "principal purposes" of CIPA was to protect "individuals *in California* from the secret recording of confidential communications." *Id.* at 124 (emphasis added). Thus, California had a strong interest in applying its law to the plaintiffs. This case is the opposite of *Kearney*. Plaintiffs are not California residents and were not in California when they visited the Website. California thus has less of an interest in applying its law as compared to Plaintiffs' home states. *See In re Yahoo Mail Litig.*, 308 F.R.D. at 604 (relying on *Kearney* in holding that "California has a comparatively lesser interest in applying CIPA to non-residents").

1    provide similar remedies.[7]  Third, a true conflict exists between California and Plaintiffs' home

2    states because each state has an interest in applying its own law.  *See Mazza*, 666 F.3d at 591-92.

3    Fourth, California does not have a predominant interest in applying its law to foreign residents for

4    the reasons explained in *Kaiser*.  Additionally, California law recognizes that "the place of the

5    wrong has the predominant interest" in a choice-of-law analysis.  Here, "the place of the wrong," is

6    Plaintiffs' home states because that is where they allege they visited the Website from and where

7    Facebook and Google allegedly intercepted their Private Information.[8]  (TAC ¶¶ 8, 345, 373.)

8    Accordingly, the Court should dismiss Plaintiffs' CIPA and CMIA claims.[9]

9         **D.    Plaintiffs' Claims Under CIPA Fail For Other Reasons**

10           In its Order dismissing the SAC, the Court held that Plaintiffs' CIPA claim was sufficiently

11   pled.  (Dkt. 49, at 6.)  In the TAC, Plaintiffs repeat the same CIPA claim, but the same result is not

12   inevitable here.  In this Motion, with fewer claims to address, Lemonaid can more fulsomely

13   demonstrate that Plaintiffs have failed to allege a violation of CIPA.

14           Plaintiffs' CIPA claim is premised on California Penal Code section 631(a).  (TAC ¶¶ 323-

15   32.)  That section generally prohibits wiretapping.  It contains four clauses that create "four avenues

16   for relief."  *Swarts v. Home Depot, Inc.*, No. 23-CV-0995, 2023 WL 5615453, at *5 (N.D. Cal. Aug.

17   30, 2023) (Tigar, J.).  Those clauses prohibit:

18           (1) where a person by means of any machine, instrument, or contrivance, or in any
19           other manner, intentionally taps, or makes any unauthorized connection . . . with any

20   ───────────────
     [7] *See* Seyfarth, *50-State Survey of Health Care Information Privacy Laws*,
21   https://www.seyfarth.com/a/web/bhRXWBkMif111KfVwiQN6V/50-state-survey-of-health-care-information-privacy-laws-2023-2024-edition.pdf.
22   [8] It should be noted that the "place of the wrong" is not outcome determinative.  In *Kaiser*, Judge
     Chen declined to engage in a "place of the wrong" analysis and still held that the non-California
23   plaintiffs could not assert a CIPA or CMIA claims.  2024 WL 1589982, at *13 n.5.  Thus, even if
     the "place of the wrong" was not Plaintiffs' home states, Plaintiffs' CIPA and CMIA claims should
24   still be dismissed.
     [9] In its Order dismissing the SAC, the Court rejected Lemonaid's argument that Plaintiffs' CMIA
25   claim should be dismissed based on California's presumption against extraterritoriality.  (Dkt. 49 at
     6.)  Lemonaid's choice-of-law argument is different from the extraterritorial argument.
26   Extraterritoriality centers on "the ability of a nonresident plaintiff to assert a claim under California
     law."  *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012).  While a choice-
27   of-law analysis examines whether, based on principles due process and federalism, "non-forum law
     should apply."  *Id.*; *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079 (N.D. Cal.
28   2023) (Orrick, J.) (differentiating choice-of-law argument verse exterritoriality argument).

telegraph or telephone wire, line, cable, or instrument;

(2) where a person willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit [or passing over any wire, line, or cable, or is being sent from, or received at any place within this state];

(3) where a person uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained; and

(4) where a person aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above.

Plaintiffs allege that Lemonaid violated all four clauses.  (TAC ¶¶ 323-32.)  Lemonaid, however, is not directly liable under clauses 1 through 3 because Lemonaid was a party to the communications at issue.  (*E.g.*, TAC ¶ 49.)  Courts have consistently held that a *party* to the communication cannot wiretap its own communications or attempt to learn the contents of those communications while they are in transit.  *See, e.g.*, *Williams v. What If Holdings, LLC*, No. C 22-03780, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (Alsup, J.) ("Parties to a conversation cannot eavesdrop on their own conversation . . . .").  Thus, to state a claim against Lemonaid, Plaintiffs must sufficiently allege Facebook or Google violated one of the first three clauses of section 631(a), and Lemonaid aided and abetted that violation.  Plaintiffs have failed to do so.

*First*, Plaintiffs cannot allege a violation under the first clause of section 631(a) because courts have "consistently" held that the first clause applies only to "communications over telephones and not through the internet."  *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023); *Gutierrez v. Converse Inc.*, No. CV 23-6547, 2024 WL 3511648, at *6 (C.D. Cal. July 12, 2024) (granting defendant's motion for summary judgement on plaintiff's section 631(a) claim because "the first clause of section 631(a) does not apply to communications sent through the chat feature on Defendant's website").  Here, Plaintiffs admit that their communications occurred over the internet: "Defendants intentionally tapped, electrically or otherwise, the lines of *internet communication* between Plaintiffs and Class Members on the one hand, and Defendants' Website on the other hand."  (TAC ¶ 327.)  Plaintiffs, therefore, have not alleged a violation of section 631(a)'s first clause because they never allege that their conversations occurred telephonically.

1      *Second*, Plaintiffs have failed to allege a violation of the second clause of section 631(a).  To

2    state a claim under section 631(a)'s second clause, a plaintiff must allege that the third-party "read[],

3    or attempts to read, or to learn the contents or meaning of any message, report, or communication

4    *while* the same is in transit, or passing over any wire, line, or cable or is being sent from, or received

5    at any place within this state."  Cal. Penal Code § 631(a) (emphasis added).  Put differently,

6    Plaintiffs must allege that Facebook and Google intercepted their communications (1) while the

7    communication was being sent from California, (2) while the communication was in transit, or (3)

8    while the communication was being received in California.

9      Here, Plaintiffs allege that the interception occurred while their communications were being

10    sent, the first scenario above.  (TAC ¶¶ 8, 146-147 [alleging that the interception occurred in

11    Plaintiffs' internet browser].)  But Plaintiffs fail to allege (a) that they sent their communications

12    from California and (b) that Facebook and Google read, attempted to read, or learned the contents of

13    their communication *while* they were being sent.  Indeed, no Plaintiff alleges that they were in

14    California when they accessed Lemonaid's website.  Thus, no communication was sent from

15    California.  In fact, Plaintiffs L.V., M.M., and M.I. affirmatively allege they accessed the Website

16    from their home states.  (TAC ¶¶ 345, 373.)  And Plaintiffs never allege that Facebook and Google

17    read or attempted to read their communications while they were being sent, as opposed to after

18    Facebook and Google had already acquired the communications.  *See Gutierrez*, 2024 WL 3511648,

19    at *8 (granting defendant's motion for summary judgment because there was no evidence that the

20    third-party "reads or attempts to read or learn the contents of communications while they are in

21    transit").  Accordingly, Plaintiffs have failed to state a claim under the second clause.

22      *Third*, Plaintiffs fail to state that Facebook and Google violated the third clause because a

23    "violation under the third clause of § 631(a) is contingent upon a finding of a violation of the first or

24    second clause of § 631(a)."  *Swarts*, 2023 WL 5615453, at *6.  Because Plaintiffs have failed to

25    state a claim under the first two clauses, their "claim for violations of § 631(a) under the third clause

26    necessarily fail as well."  *Id.*

27      In sum, Plaintiffs have failed to allege that Facebook and Google violated section 631(a).  As

28    a result, Lemonaid cannot be liable under the fourth clause because no predicate violation occurred.

**E.**    <u>**Plaintiffs' Claims Under The Consumer Protection Statutes Fail**</u>

In its Order dismissing the SAC, the Court dismissed Plaintiffs' consumer protection statute claims for two reasons: (1) Plaintiffs failed to allege a deceptive act (Dkt. 49, at 8); and (2) Plaintiffs failed to allege injury (*id.*).

First, as to deception, Plaintiffs did not amend their allegations.  They still do not allege "what the deceptive statements were, or that they saw and relied upon them." (*Id.*)  Thus, Plaintiffs' allegations fail for the same reasons as explained in Lemonaid's prior motion to dismiss.

Second, as to injury,  Plaintiffs again fail to allege that they individually suffered the following injuries: (1) invasion of privacy (indeed, they dropped their invasion of privacy claim); (2) "lost time and opportunity costs associated with attempting to mitigate the actual consequences of the transmissions of their Private Information"; and "continued and ongoing risk of further disclosure of their Private Information." (TAC ¶¶ 46, 234.)  These allegations thus fail for the same reasons explained in Lemonaid's prior motion, as the Court agreed with in its earlier Order.

Finally, also as to injury, Plaintiffs amended their allegations to individually allege injuries for mental distress, lost benefit of the bargain, and diminishment in value of their Private Information.  (TAC ¶ 55.)  But these allegations are still too conclusory.  Plaintiffs do not allege what mental distress they suffered, how the value of their Private Information has diminished, or how they lost the benefit of the bargain when they ordered prescriptions.  Moreover, Plaintiffs do not connect any of these injuries to an unfair or deceptive act.  Thus, Plaintiffs have failed to allege injury within the meaning of the NYGBL and Chapter 93A, and their claims should be dismissed.[10]

**F.**    <u>**Plaintiffs' Common-Law Claims Fail**</u>

**_1._**    **_Plaintiffs' Negligence Claims Should Be Dismissed_**

In its Order dismissing the SAC, the Court dismissed Plaintiffs' negligence claims because

---

[10] In the Order dismissing the SAC, the Court did not directly address Lemonaid's argument that Plaintiffs also failed to allege an "unfair" act under Chapter 93A.  In the TAC, Plaintiffs M.M. and M.I. repeat the same allegations regarding unfairness.  (*See* TAC ¶ 348.)  Plaintiffs have failed to allege an unfair act because they do not allege how any act by Lemonaid was "(1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers, competitors, or other business people." *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 79 (1st Cir. 2020).

1  they failed to allege injury.  (Dkt. 49, at 8.)  For the reasons discussed in Section III.E. (state

2  consumer protection statutes), Plaintiffs' alleged injuries are too conclusory to state a claim.

3  Separately, and as discussed in more detail below, Plaintiffs' mental distress allegations fail to

4  establish an injury under the negligence law of their home states.

5        First, Plaintiff A.J. has not alleged a mental distress injury because Alabama "has not

6  recognized emotional distress as a compensable injury or harm in negligence actions."  *Hamilton v.*

7  *Scott*, 97 So. 3d 728, 736 (Ala. 2012).  Second, for the remaining Plaintiffs, to recover for emotional

8  distress based on negligence, they must assert a claim for negligent infliction of emotional distress

9  ("NIED").  *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A*., 327 N.C. 283, 303-04 (1990);

10  *Taggart v. Costabile*, 131 A.D.3d 243, 245 (2015); *Helfman v. Ne. Univ.*, 485 Mass. 308, 327

11  (2020).  Plaintiffs do not assert such a claim.  But even if they had, it would fail.  To plausibly assert

12  a claim for NIED in North Carolina, a plaintiff must allege "severe emotional distress," meaning

13  "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression,

14  [or] phobia."  *Johnson*, 131 A.D.3d at 304.  Plaintiff H.G. has not alleged that the targeted health

15  ads caused him to have a mental disorder.  To recover for emotional distress in New York, a

16  plaintiff must allege "that the breach of the duty owed directly to the injured party . . . endangered

17  the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety."

18  *Taggart*, 131 A.D.3d at 253.  Plaintiff L.V. has not alleged this.  Finally, in Massachusetts, a

19  plaintiff must allege "physical harm manifested by objective symptomatology."  *Helfman*, 485

20  Mass. at 327.  Plaintiffs M.M. and M.I. have not alleged physical harm.  Accordingly, the Court

21  must dismiss Plaintiffs' negligence claims.

22        **2.**      ***Plaintiffs' Breach Of Fiduciary Duty Claims Should Be Dismissed***

23        To assert a claim for breach of fiduciary duty, Plaintiffs must allege that (1) a fiduciary

24  relationship existed between the parties, (2) the defendant breached the fiduciary duty owed to the

25  plaintiff, and (3) the breach proximately caused the plaintiff's injury.  *See, e.g.*, *Musselwhite v.*

26  *Cheshire*, 266 N.C. App. 166, 179 (2019).

27        First, Plaintiffs' claim should be dismissed because Plaintiffs have not plausibly alleged an

28  injury for the same reasons discussed in Section III.E. (state consumer protections statutes) and

Section III.F.1 (negligence).  Second, even if Plaintiffs could assert an injury, they have not alleged that a fiduciary relationship existed between the parties.  Plaintiffs allege a fiduciary relationship existed because (i) Lemonaid was a health care provider and Plaintiffs were its patients and (ii) Lemonaid collected Plaintiffs' Private Information.  (TAC ¶ 265.)

As to (i), Plaintiff A.J. is not in a fiduciary relationship with Lemonaid because "Alabama caselaw holds that a physician-patient relationship is not a fiduciary relationship as a matter of law." *Gunter v. Huddle*, 724 So. 2d 544, 546 (Ala. Civ. App. 1998).  Plaintiff M.M. and M.I. are not in a fiduciary relationship with Lemonaid because they never signed up for Lemonaid's services.  Indeed, they allege that they only researched medical conditions, treatments, and doctors on the Website.  (TAC ¶¶ 73, 81.)  The law cannot be that a website that provides health information is in a fiduciary relationship with a website visitor who merely researches medical conditions.  *See In re LastPass Data Sec. Incident Litig.*, No. CV 22-12047, 2024 WL 3580646, at *11 (D. Mass. July 30, 2024) ("[F]iduciary relationships form when one party relies on the other's guidance and judgment in conducting complex transactions.").  Finally, Plaintiff H.G. has not alleged facts to establish that he is in a fiduciary relationship with Lemonaid.  Although Plaintiff H.G. alleges that he "ordered prescriptions," this single allegation does not establish a physician-patient or any other fiduciary relationship.  (TAC ¶ 57.)[11]  Plaintiff does not allege he ever consulted with a physician, and he otherwise provides no details regarding his prescriptions that would allow the Court to conclude that Lemonaid owed him a fiduciary duty.  *See CommScope Credit Union v. Butler & Burke, Ltd. Liab. P'ship*, 369 N.C. 48, 53 (2016) ("[A] fiduciary relationship arises whenever there is confidence reposed on one side, and resulting domination and influence on the other.").

As to (ii), Courts have held that a fiduciary relationship does not exist simply because one party provides confidential information to the other party.  *See, e.g.*, *In re Ambry Genetics Data*

---

[11] Indeed, Lemonaid's Consent to Telehealth provision specifically provides that making certain requests does not in and of itself create a doctor-patient relationship: "I understand that making a request for treatment (by completing a visit in the App or Website and making payment or by starting a video visit) or requesting a lab test or sending a message through the app does not in and of itself create a duty of care or create a doctor-patient relationship." https://www.lemonaidhealth.com/legals/consent-to-telehealth#:~:text=I%20understand%20that%20the%20doctor%20or%20nurse%20practitioner%20has,duty%20of%20care%20or%20create%20a%20doctor%2Dpatient%20relationship.

1    *Breach Litig.*, 567 F. Supp. 3d 1130, 1146 (C.D. Cal. 2021) (holding that no fiduciary relationship

2    existed where "Plaintiffs simply allege that Defendants collected Plaintiffs' private information so

3    Defendants could provide their genetic testing to screen for and diagnose diseases").  Thus,

4    Lemonaid does not owe Plaintiffs a fiduciary duty based on its collection of their information.

5    Plaintiffs' claims should thus be dismissed.

6            ***3.      Plaintiff L.V.'s Breach Of Confidence Claims Should Be Dismissed***

7            The Court previously dismissed Plaintiff L.V.'s breach of confidence claim because she had

8    not adequately alleged injury.  (Dkt. 49, at 9.)  For the same reasons that Plaintiff L.V. failed to

9    allege an injury under her negligence and state consumer protection claims, Plaintiff L.V. has failed

10   to allege an injury based on breach of confidence.  Accordingly, her claim should be dismissed.

11           ***4.      Plaintiffs' Unjust Enrichment Claims Should Be Dismissed***

12           Plaintiffs' unjust enrichment claims fail for two reasons.  First, to the extent the Court

13   dismisses Plaintiffs' other claims, Plaintiffs have no basis to allege that Lemonaid acted "unjustly,"

14   and so this claim would fail too.  Second, Plaintiffs have failed to plausibly allege that Lemonaid

15   was enriched to their detriment.  Plaintiffs never allege that they intended to sell their Private

16   Information, or even if they did intend to, that they would now receive less for it because Lemonaid

17   allegedly shared their Private Information with Facebook and Google.  They similarly do not allege

18   that Lemonaid ever sold their Private Information to Facebook or Google or ever received any

19   money for their Private Information.  Nor do Plaintiffs allege that at the time they signed up for

20   Lemonaid's services they "intentionally and deliberately" had an expectation that they would be

21   compensated for their Private Information.  *Butler v. Butler*, 239 N.C. App. 1, 12 (2015).  Thus,

22   Plaintiffs' claim should be dismissed.

23   **IV.    <u>CONCLUSION</u>**

24           Defendants respectfully request that the Motion be granted and the TAC dismissed.

25

26

27

28

1 | Dated: August 23, 2024                SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

2

3 | By: _____/s/ Jay T. Ramsey_____

4 |                   P. CRAIG CARDON
                    JAY T. RAMSEY

5 |                   ALYSSA SONES
                    KEVIN M. MURPHY

6 |                   *Attorneys for Defendants*
              LEMONAID HEALTH INC. and LMND MEDICAL

7 |     GROUP, INC., d/b/a LEMONAID HEALTH, a California
                  Professional Corporation

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4883-3921-7877.10

DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT