SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
P. CRAIG CARDON, Cal Bar No. 168646
ccardon@sheppardmullin.com
JAY T. RAMSEY, Cal Bar No. 273160
jramsey@sheppardmullin.com
ALYSSA SONES, Cal Bar No. 318359
asones@sheppardmullin.com
KEVIN M. MURPHY, Cal Bar No. 346041
kemurphy@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:    310.228.3700
Facsimile:    310.228.3701

*Attorneys for Defendants*
LEMONAID HEALTH INC. and LMND
MEDICAL GROUP, INC., d/b/a LEMONAID
HEALTH, a California Professional Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| A.J., H.G, L.V, M.M. and M.I., individually and on behalf of all others similarly situated, | Case No. 3:23-cv-03288-RFL |
|---|---|
| Plaintiffs, | **CLASS ACTION** |
| v. | *Hon. Rita F. Lin* |
| LEMONAID HEALTH INC. and LMND MEDICAL GROUP, INC., d/b/a LEMONAID HEALTH, a California Professional Corporation, | **DEFENDANTS' REPLY IN SUPPORT MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT** |
| Defendants. | Date: October 22, 2024<br>Time: 10:00 a.m.<br>Courtroom 15 – 18th floor |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. LEMONAID IS NOT RAISING ARGUMENTS IMPROPERLY ....................................... 1

III. PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTES OF LIMITATION ............ 2

IV. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR ADDITIONAL REASONS .................................................................................................................. 5

    A. Plaintiffs' Claims Based On Unidentified "Other Tracking Technologies" Must Be Dismissed ........................................................................................... 5

    B. Plaintiffs' Claims Under The ECPA Fail Because The Crime-Tort Exception Does Not Apply .............................................................................. 6

    C. Plaintiffs' CIPA And CMIA Claims Must Be Dismissed Because Plaintiffs Are Not California Residents ............................................................ 7

    D. Plaintiffs' Claims Under CIPA Fail For Other Reasons ................................. 8

    E. Plaintiffs' Claims Under The Consumer Protection Statutes And The Common Law Fail ........................................................................................... 8

V. CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allstate Ins. Co. v. Countrywide Fin. Corp.*
   824 F. Supp. 2d 1164 (C.D. Cal. 2011)...................................................................................1

*In re Ambry Genetics Data Breach Litig.*
   567 F. Supp. 3d 1130 (C.D. Cal. 2021)...................................................................................9

*In re Apple iPhone Antitrust Litig.*
   846 F.3d 313 (9th Cir. 2017)...................................................................................................1

*Banko v. Apple, Inc.*
   No. 13-02977, 2013 WL 6623913 (N.D. Cal. Dec. 16, 2013).................................................1

*Brown v. Google LLC*
   525 F. Supp. 3d 1049 (N.D. Cal. 2021)..........................................................................3, 6, 7

*Cooper v. Mount Sinai Health Systems, Inc.*
   No. 23 Civ. 9485, 2024 WL 3586357 (S.D.N.Y. July 30, 2024)............................................9

*Doe v. Fullstory, Inc.*
   712 F. Supp. 3d 1244 (N.D. Cal. 2024) ..................................................................................5

*Doe v. Kaiser Health Plan, Inc.*
   No. 23-cv-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......................................6, 7

*Doe v. Microsoft Corp.*
   No. C23-0718, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023)............................................4

*Doe v. Tenet Healthcare Corp.*
   No. 23-12978, 2024 WL 1756075 (D. Mass. April 23, 2024).................................................9

*In re Form Motor co. Dps6 Powershift Transmission Prods. Liab. Lit.*
   No. ML 18-02814, 2019 WL 6998668 (C.D. Cal. Sept. 5, 2019)............................................3

*Fox v. Ethicon Endo-Surgery, Inc.*
   35 Cal. 4th 797 (2005).............................................................................................................3

*Harrison v. Great HealthWorks, Inc.*
   No. 17-cv-705, 2017 WL 2554448 (S.D. Cal. June 13, 2017).................................................4

*Hill v. Workday, Inc.*
   No. 23-CV-06558, 2024 WL 3012802 (N.D. Cal. June 14, 2024) .........................................8

*Javier v. Assurance IQ, LLC*
   649 F. Supp. 3d 891 (N.D. Cal. 2023) ................................................................................4, 5

*Jolly v. Eli Lilly & Co.*
  44 Cal. 3d 1103 (1988) ................................................................................................... 3

*Josten v. Rite Aid Corp.*
  No. 18-cv-0152, 2019 WL 3718739 (S.D. Cal. Aug. 7, 2019) ..................................... 3

*K & C Dev. Corp. v. AmSouth Bank, N.A.*
  597 So. 2d 671 (Ala. 1992) ......................................................................................... 10

*Kane v. Univ. of Rochester*
  No. 23-CV-6027, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ............................... 9

*Lockerman v. S. River Elec. Membership Corp.*
  250 N.C. App. 631 (2016) ........................................................................................... 10

*Moore v. Apple, Inc.*
  73 F. Supp. 3d 1191 (N.D. Cal. 2014) ........................................................................ 5

*Planned Parenthood Federation of America, Inc. v. Newman*
  51 F.4th 1125 (9th Cir. 2022) ...................................................................................... 6

*R.C. v. Walgreen Co.*
  No. EDCV 23-1933, 2024 WL 2263395 (C.D. Cal. May 9, 2024) ......................... 7, 9

*Sussman v. American Broadcasting Companies, Inc.*
  186 F.3d 1200 (9th Cir. 1999) .................................................................................. 6, 7

*Van Brode Grp., Inc. v. Bowditch & Dewey*
  36 Mass. App. Ct. 509 (1994) ..................................................................................... 10

*W. Digital Techs., Inc. v. Viasat, Inc.*
  No. 22-CV-04376, 2023 WL 7739816 (N.D. Cal. Nov. 15, 2023) ............................. 2

*Zimmerman v. Ford Motor Co.*
  No. 18-CV-02149, 2019 WL 6481695 (C.D. Cal. Sept. 20, 2019) ............................. 4

Statutes

Cal. Penal Code § 631(a) ...................................................................................................... 8

Other Authorities

Federal Rule of Civil Procedure 12(c) ................................................................................. 2

Federal Rule of Civil Procedure 12(g) ............................................................................ 1, 2

Federal Rule of Civil Procedure 12(g)(2) ....................................................................... 1, 7

## I.  INTRODUCTION

As explained in Lemonaid's Motion[1], the TAC should be dismissed with prejudice. First, nearly all of Plaintiffs' claims are time-barred. Second, Lemonaid did not violate the ECPA because it was a party to the communications at issue and the crime-tort exception does not apply. Third, Plaintiffs cannot assert CIPA or CMIA claims because they are not California residents. And fourth, Plaintiffs' remaining claims suffer from the same flaws that the Court identified in its Order dismissing the SAC.

Plaintiffs' Opposition only confirms that dismissal is the right result. In many instances, Plaintiffs do not meaningfully address Lemonaid's arguments, but instead repeat conclusory allegations from the TAC, misrepresent Lemonaid's privacy policies, or cite inapposite caselaw. In other instances, Plaintiffs avoid discussion of the merits altogether by wrongfully asserting that Lemonaid is precluded from raising its arguments. For the reasons explained below, the Court should ignore these distractions and dismiss the TAC with prejudice.

## II.  LEMONAID IS NOT RAISING ARGUMENTS IMPROPERLY

Plaintiffs argue throughout the Opposition that the Court should ignore most of Lemonaid's arguments because Lemonaid purportedly did not include them in its earlier motion to dismiss the SAC. (Opp. at 2-3, 5, 7.) But the TAC asserts new allegations, raises new theories, or clarifies Plaintiffs' claims in a way that calls to the forefront the arguments that Lemonaid included in its Motion. The arguments are thus properly addressed now. Beyond that, Plaintiffs' reliance on Federal Rule of Civil Procedure 12(g)(2) for the proposition that the Court should not allow a defective pleading to proceed because of a technicality should be rejected. *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) (noting that adherence to Rule 12(g)(2) "can produce unnecessary and costly delays, contrary to the direction of Rule 1"); *Banko v. Apple, Inc.*, No. 13-02977, 2013 WL 6623913, at *2 (N.D. Cal. Dec. 16, 2013) (Seeborg, J.) ("Although Rule 12(g) technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion . . . courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy."); *Allstate Ins. Co. v. Countrywide*

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as in the Motion.

*Fin. Corp.*, 824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011) (explaining that the purpose of Rule 12(g) "is to avoid repetitive motion practice, delay, and ambush tactics," not forcing defendants to file a Rule 12(c) motion asserting the same arguments already briefed before the court). In light of these cases, and the fact that Plaintiffs' TAC raises new issues, the Court should address the merits of Lemonaid's arguments, which are fully briefed by the parties. *See W. Digital Techs., Inc. v. Viasat, Inc.*, No. 22-CV-04376, 2023 WL 7739816, at *2 (N.D. Cal. Nov. 15, 2023) (Gilliam, J.).

### III. PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTES OF LIMITATION

As set forth in the Motion, the statutes of limitation bar nearly all of Plaintiffs' claims. (Mot. at 1-4.) Plaintiffs affirmatively allege that, shortly after visiting Lemonaid's website and searching for and viewing information about sensitive health issues, they saw **advertisements for Lemonaid that mentioned those private health issues** on their Facebook accounts. (TAC ¶¶ 52, 68, 76, 84; *see also id.* Ex. A [images of exemplar ads].) They also allege that they were immediately injured by these advertisements. (TAC ¶¶ 55, 71, 79, 87.) At that point in time, Plaintiffs both knew that they were injured and would have had reason to believe that, in order for Facebook to run those advertisements, Lemonaid must have shared their information with Facebook. (Mot. at 1-4.) Plaintiffs may not have known the precise mechanism of how the information was shared, but they would have been on inquiry notice of the alleged sharing, which is sufficient to commence the running of the statutory period. (*Id.*) Because Plaintiffs' affirmative allegations establish the foregoing and that it all occurred long ago, Plaintiffs' claims are time barred. (*Id.*)

In the Opposition, Plaintiffs assert four arguments in response. (Opp. at 2-4.) None are persuasive.

*First*, Plaintiffs argue that their allegations concerning inquiry notice were already addressed in the Court's Order dismissing the SAC. (Opp. at 3.) But Plaintiffs' allegations regarding when they saw targeted health ads and the injuries they suffered as a result immediately thereafter were not in the SAC and were therefore not considered by the Court. (*Compare* SAC ¶¶ 49-52, 57-68 *with* TAC ¶¶ 48-55, 64-87.)

*Second*, Plaintiffs argue that they were not on inquiry notice until shortly before suing Lemonaid because "they had no reason to suspect Lemonaid shared their Private Information."

(Opp. at 3.) But this conclusory allegation is contradicted by Plaintiffs' other allegations, as explained above. In reality, Plaintiffs are claiming that they couldn't have learned the precise workings of the Facebook Pixel until later, but the inquiry rule requires much less—to trigger a statutory period, the plaintiff need only have reason to suspect that "a type of wrongdoing ha[d] injured them." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). They don't need to know precisely how it happened or even who the wrongdoer allegedly was (*id.*), they only need to know that they suffered an injury. *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988) ("A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery.")

The cases that Plaintiffs cite are inapposite. In each case, the plaintiff did not even know they had been injured, and thus was not on inquiry notice of anything. Here, by contrast, Plaintiffs allege an immediate injury. For example, in *In re Form Motor co. Dps6 Powershift Transmission Prods. Liab. Lit.*, No. ML 18-02814, 2019 WL 6998668 (C.D. Cal. Sept. 5, 2019), the defendant argued that the plaintiffs, purchasers of defective automobiles, were on inquiry notice on the date they purchased their respective vehicles. *Id.* at *3. The court rejected that argument, explaining that the plaintiffs "had no reason to know they were injured by wrongdoing . . . *at least* until they started experiencing problems" with their vehicles. *Id.* (emphasis in original). The same is true for the other cases that Plaintiffs cite; in each, nothing alerted the plaintiffs to their injury, and thus to wrongdoing. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1071 (N.D. Cal. 2021) (Koh, J.) (no allegations that plaintiffs were alerted to their injury shortly after using Google's private browsing mode); *Josten v. Rite Aid Corp.*, No. 18-cv-0152, 2019 WL 3718739 (S.D. Cal. Aug. 7, 2019) (same regarding inflated drug prices). In contrast, here, Plaintiffs were alerted to wrongdoing when "they started experiencing problems," i.e., receiving targeted health advertisements concerning their medical conditions.

***Third***, Plaintiffs argue that even if they were on inquiry notice, they could not have discovered their claims through a reasonable investigation. (Opp. at 4.) But before Plaintiffs can even argue that their claims could not be discovered, they must allege that they first tried to discover them. *See Fox*, 35 Cal. 4th at 808 ("[P]laintiffs are required to conduct a reasonable investigation

after becoming aware of an injury."). Plaintiffs do not allege they investigated the cause of their injuries. *See Zimmerman v. Ford Motor Co.*, No. 18-CV-02149, 2019 WL 6481695, at *5 (C.D. Cal. Sept. 20, 2019) (holding that the plaintiff's claims were time-barred because the plaintiff did not meet "his burden of pleading sufficient facts demonstrating that he undertook a reasonable investigation once on inquiry notice that another's wrongdoing could be the source of his vehicle's troubles"). In any event, as noted above, the facts as alleged—receipt of advertisements on Facebook about Lemonaid and the health conditions they searched for on the Website—put plaintiffs on inquiry notice that their information had been shared with Facebook, even if they didn't know how the Pixel worked or the precise mechanism of the alleged sharing.

**Fourth**, Plaintiffs' claim that Lemonaid's Privacy Policy would have prevented them from discovering the wrongdoing must be rejected. As an initial matter, Plaintiffs don't allege that they reviewed the Privacy Policy, so this argument is irrelevant. Beyond that, as Lemonaid stated in its earlier motion to dismiss the SAC, the privacy policies disclosed that Lemonaid may share a user's information with Facebook. (Dkt. 37-1, at 19-20.) Even if the privacy policies did not detail the specific health information shared, the privacy policies coupled with the targeted advertisements would have at least put a reasonable person on notice that Lemonaid may have shared their Private Information with Facebook.[2]

**Fourth**, Plaintiffs contend that *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) (Breyer, J.) supports their position. (Opp. at 4.) Not so. In *Javier*, the plaintiff did not admit "that he assumed his information had been collected by a *third party*," as Plaintiffs state. (*Id.* [emphasis added].) Rather, the plaintiff assumed that the website owner, Assurance, collected his

---

[2] *Harrison v. Great HealthWorks, Inc.*, No. 17-cv-705, 2017 WL 2554448 (S.D. Cal. June 13, 2017) and *Doe v. Microsoft Corp.*, No. C23-0718, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) do not support Plaintiffs' argument. In *Harrison*, the court held that the statute of limitations did not bar the plaintiff's claim because the complaint did "not show on its face that her claim would be barred absent tolling." *Harrison*, 2017 WL 2554448, at *3. In contrast, here, the TAC shows that Plaintiffs' claims are barred absent tolling because the basis for Plaintiffs' claims, their visit to the Website, occurred outside the statute of limitations period. (Mot. at 4.) In *Microsoft*, the plaintiffs alleged that they "had no indication" their private health information was transmitted to third parties. 2023 WL 8780879, at *1. Here, Plaintiffs did have an indication—the targeted advertisements.

information. *Javier*, 649 F. Supp. 3d at 902. That admission, along with the fact that the plaintiff had constructive notice of Assurance's privacy policy (which stated that Assurance "may use third party vendors to assist" in collecting information), led the court to hold that the plaintiff was on inquiry notice. *Id.* at 903. Compared to *Javier*, this case presents an even stronger basis for inquiry notice. Like the plaintiff in *Javier*, Plaintiffs admit that that they knew Lemonaid collected their information. (*See, e.g.*, TAC ¶¶ 54-55.) But, unlike *Javier*, Plaintiffs did not even need to examine Lemonaid's privacy policies to learn that Lemonaid may have shared their data because Plaintiffs received advertisements in their Facebook timelines from Lemonaid, suggesting that Lemonaid had shared their information with Facebook.[3]

At bottom, Plaintiffs allege that they did not discover that Lemonaid had shared their Private Information until they contacted their counsel in April and October 2023. Plaintiffs, however, have not presented any explanation as to why they could not have made this same discovery during the statute of limitations period. Therefore, their claims are time-barred.

## IV. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR ADDITIONAL REASONS

### A. Plaintiffs' Claims Based On Unidentified "Other Tracking Technologies" Must Be Dismissed

The Court should dismiss Plaintiffs' claims based on "other tracking technologies" because Plaintiffs do not allege any facts about these technologies. (Mot. at 4-5.) In the Opposition, Plaintiffs state that their claims are not "based on 'other' or 'similar' [tracking] technologies." (Opp. at 5.) But the TAC appears to include allegations that are premised on "other tracking technologies" (TAC ¶¶ 256, 301, 303, 320, 338, 346), so the Court should make official what Plaintiffs seem to concede and dismiss Plaintiffs' claims to the extent they are premised on such technologies. *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1205 (N.D. Cal. 2014) (Koh, J.).

---

[3] *Doe v. Fullstory, Inc.*, 712 F. Supp. 3d 1244 (N.D. Cal. 2024) (Orrick, J.) is distinguishable for the same reasons as the other cases Plaintiffs cite. The plaintiff in *Fullstory* did not allege that she received targeted advertisements that would have put her on notice that her information had been shared with third parties.

### B. Plaintiffs' Claims Under The ECPA Fail Because The Crime-Tort Exception Does Not Apply

Lemonaid is not liable under the ECPA because it was a party to the communications at issue and the crime-tort exception does not apply. (Mot. at 5-6.) In the Opposition, Plaintiffs argue that the crime-tort exception applies because Lemonaid permitted Google and Facebook to intercept their Private Information in violation of HIPAA, the FTCA, and Plaintiffs' right to privacy. (Opp. at 5-6.) But under the crime-tort exception, the criminal or tortious purpose "must be separate and independent from" the interception, meaning that the interception itself cannot establish the criminal or tortious purpose. *Planned Parenthood Federation of America, Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). For example, in *Sussman v. American Broadcasting Companies, Inc.*, 186 F.3d 1200 (9th Cir. 1999), the Ninth Circuit held that even though the defendant's tape recording of the plaintiffs "may well have been a tortious invasion of privacy under state law," the crime-tort exception did not apply because the defendant did not have "an illegal or tortious purpose" separate and apart from making the tape. *Id.* at 1203. Here, even if the interception of Plaintiffs' Private Information violated the law, Plaintiffs have not established that Lemonaid had a criminal or tortious purpose separate and apart from the interception. *See Doe v. Kaiser Health Plan, Inc.*, No. 23-cv-02865, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (Chen, J.) (holding that disclosure of information to third parties in violation of HIPAA did not establish a criminal or tortious intent).[4] In fact, Plaintiffs affirmatively allege that Lemonaid's purpose was *not* criminal or tortious: Plaintiffs allege that Lemonaid used the Pixels to obtain "enhanced advertising services and more-cost efficient marketing." (TAC ¶ 213.)

The cases that Plaintiffs cite are either distinguishable or not in accord with *Sussman*. In *Brown*, the plaintiffs alleged that "Google intercepted their communications for the purpose of

---

[4] Plaintiffs attempt to distinguish *Kaiser*, but they misread the case. In *Kaiser*, the plaintiffs alleged that the defendant knowingly disclosed their health information to third-parties. 2024 WL 1589982, at *7. The plaintiffs argued that the disclosure of information itself violated HIPAA and constituted a criminal or tortious purpose. *Id.* at *10. Following *Sussman*, the court rejected that argument because the disclosure (like the tape-recording in *Sussman*) could not serve as the criminal or tortious purpose. *Id.* Here, Plaintiffs make the same argument that the *Kaiser* court rejected—that violations of various state or federal laws based on the interception/disclosure of information to Google and Facebook constitutes a criminal or tortious purpose. (Opp. at 5-6.)

associating their data with preexisting user profiles," and that the "association of their data" (not the interception) constituted a tortious purpose.  525 F. Supp. 3d at 1067.  In contrast, here, Plaintiffs allege that the interception itself constituted the tortious purpose.  (TAC ¶ 316.)  The other cases cited by Plaintiffs are distinguishable on the same grounds—namely, there was a criminal or tortious intent separate and apart from the interception itself.  Finally, in *R.C. v. Walgreen Co.*, No. EDCV 23-1933, 2024 WL 2263395 (C.D. Cal. May 9, 2024), the court held that because the plaintiffs had plausibly alleged an invasion of privacy claim based on third-party pixels that intercepted their health information, they had also alleged tortious intent.  *Id.* at *15.  *Walgreen* is distinguishable because the Court here has already held that Plaintiffs **did not** plausibly allege an invasion of privacy claim, as the plaintiffs in *Walgreen* had.  (Dkt. 49, at 8-9.)  But *Walgreen* was also inconsistent with *Sussman* and *Kaiser*, and thus should not be followed.  Plaintiffs' ECPA claim should be dismissed.

### C. Plaintiffs' CIPA And CMIA Claims Must Be Dismissed Because Plaintiffs Are Not California Residents

Plaintiffs cannot assert a CIPA or CMIA claim because, under a choice-of-law analysis, the interests of Plaintiffs' home states outweigh California's interest in having its law applied.  (Mot. at 6-9.)  In the Opposition, Plaintiffs first argue that under Rule 12(g)(2) Lemonaid is barred from asserting its choice-of-law argument.  (Opp. at 7.)  This should be rejected for the reasons explained in Section I.  Second, Plaintiffs argue that the Court already addressed Lemonaid's choice-of-law argument in its Order dismissing the SAC.  (Opp. at 8.)  But, as explained in the Motion, the Court's Order addressed Lemonaid's extraterritoriality argument, which is fundamentally different than a choice-of-law argument.  (Mot. at 9, fn. 9.)  Third, Plaintiffs argue that Lemonaid's choice-of-law argument "clearly" does not apply to their CMIA claim because "the CMIA does not contain geographic limitations."  (Opp. at 8.)  Plaintiffs' argument is squarely at odds with *Kaiser*, which they do not address and which held in a factually analogous situation that out-of-state plaintiffs could not assert CIPA or CMIA claims.  *Kaiser*, 2024 WL 1589982, at *13, 25.  Moreover, Plaintiffs again confuse extraterritoriality with choice-of-law.  Whether or not the CMIA contains

geographical limitations does not matter for purposes of choice-of-law.  Plaintiffs' CIPA and CMIA claims should be dismissed.[5]

### D. Plaintiffs' Claims Under CIPA Fail For Other Reasons

Plaintiffs have failed to allege a CIPA violation premised on California Penal Code section 631(a)'s four clauses.  (Mot. at 9-11.)  In the Opposition, Plaintiffs address only Lemonaid's arguments under the second clause, arguing that they have plausibly alleged an interception "in transit."  (Opp. at 9-10.)  Plaintiffs, however, have not alleged an interception "in transit"; they allege that the interception occurred while their message was being sent:  the Pixels "intercept information from the user's browser as the user enters information into the Website."  (TAC ¶ 8.)  Because Plaintiffs allege that the interception occurred while being sent from their device, they must also allege that they sent their communications from California.  *See* Cal. Penal Code § 631(a).  Plaintiffs, however, allege that they accessed the Website in their respective home states; thus, no communications were sent from California.  (TAC ¶¶ 345, 373.)  Furthermore, Plaintiffs fail to allege that Google and Facebook read or attempted to read Plaintiffs' communications while they were being sent.  (Mot. at 11.)[6]

### E. Plaintiffs' Claims Under The Consumer Protection Statutes And The Common Law Fail

*Failure to allege injury.*  In the Opposition, Plaintiffs first argue that they have alleged an injury based on the "unauthorized disclosure of their PHI."  (Opp. at 12-13.)  But the disclosure of PHI in and of itself does not amount to a cognizable injury.  If Plaintiffs are arguing that the disclosure constitutes an "invasion of privacy," that argument fails because the Court has already held that Plaintiffs did not plausibly allege an invasion of privacy claim.  (Dkt. 49, at 9.)  Second, Plaintiffs argue that they have alleged an emotional distress injury.  (Opp. at 12-13.)  Plaintiffs do not, however, "allege 'facts pertaining to the nature and extent of [their] emotional or mental

---

[5] *Hill v. Workday, Inc.*, No. 23-CV-06558, 2024 WL 3012802 (N.D. Cal. June 14, 2024) (Kang, Mag. J.) does not support Plaintiffs.  The *Hill* court did not conduct a choice-of-law analysis because the parties agreed that California substantive law applied.  2024 WL 3012802, at *12.

[6] Plaintiffs claim premised on CIPA's third clause also fails because Plaintiffs have not plausibly alleged a violation of the first and second clauses.

suffering.'" *Walgreen*, 2024 WL 2263395, at *12. And, with respect to their negligence claim, Plaintiffs' emotional distress allegations additionally fail because their home state either does not recognize emotional distress as an injury (Plaintiff A.J.) or they must assert a negligent infliction of emotional distress claim (remaining Plaintiffs). Third, Plaintiffs contend that they have an alleged an injury based on "lost benefit of the bargain" and "diminution in value of their Private Information." (Opp. at 12-13.) But, again, Plaintiffs do not allege in the TAC or explain in the Opposition *how* the value of their Private Information has diminished or *how* they have lost the benefit of the bargain when they ordered prescriptions that they later received. *See Walgreen*, 2024 WL 2263395, at *12.

*Failure to allege a deceptive act and causation.* In the Opposition, Plaintiffs contend that the privacy policies in general were deceptive (Opp. at 11), but they never identify any specific statements that they relied on. The only statement identified (TAC ¶ 166) was in a version of Lemonaid's privacy policy that was effective when no Plaintiff visited the Website, and no Plaintiff alleges that they viewed the statement, let alone relied on it.[7] Indeed, Plaintiffs asserted these same allegations in the SAC, and the Court held that they were insufficient. (*Compare* SAC ¶¶ 146-49 *with* TAC ¶¶ 165-68; Dkt. 49, at 8].)[8]

*Failure to allege a fiduciary duty.* Plaintiffs argue that "sharing PHI creates a fiduciary duty" (Opp. at 14), but merely sharing data does not establish a fiduciary relationship. *See In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1146 (C.D. Cal. 2021). Fiduciary

---

[7] For the same reasons, the three out-of-circuit cases that Plaintiffs cite are distinguishable. In each, the plaintiffs alleged an express provision in the defendant's privacy policy induced them to share their medical data under the belief that the data would not be disclosed. *See Cooper v. Mount Sinai Health Systems, Inc.*, No. 23 Civ. 9485, 2024 WL 3586357, at *10 (S.D.N.Y. July 30, 2024); *Doe v. Tenet Healthcare Corp.*, No. 23-12978, 2024 WL 1756075, at *6 (D. Mass. April 23, 2024); *Kane v. Univ. of Rochester*, No. 23-CV-6027, 2024 WL 1178340, at *17 (W.D.N.Y. Mar. 19, 2024). Here, Plaintiffs do not identify any express provisions in the privacy policies that they relied on or that caused them injury.

[8] To the extent Plaintiffs M.M. and M.I. allege an unfair act under Chapter 93A based on Lemonaid's failure to implement reasonable security measures to safeguard Plaintiffs' data, their claim fails because their state data breach claims were dismissed with prejudice. (Dkt. 49, at 7.) To the extent Plaintiffs allege Lemonaid committed an unfair act based on their common law or statutory claims, their Chapter 93A claim fails for the same reasons that the statutory and common law claims fail.

relationships are special, existing when "trust and confidence are reposed" by one party to the other. *See K & C Dev. Corp. v. AmSouth Bank, N.A.*, 597 So. 2d 671, 675 (Ala. 1992); *Van Brode Grp., Inc. v. Bowditch & Dewey*, 36 Mass. App. Ct. 509, 516 (1994) (explaining that a fiduciary duty arises "when one reposes faith, confidence, and trust in another's judgment and advice"); *Lockerman v. S. River Elec. Membership Corp.*, 250 N.C. App. 631, 635 (2016).  Plaintiffs do not explain how such a relationship exists based on merely researching conditions on the Website or ordering prescriptions.  Indeed, Plaintiffs agreed when signing up for their accounts that they were not creating a doctor-patient relationship.  (Mot. at 14.)  Therefore, no fiduciary relationship exists.

*Failure to allege unjust enrichment.*  Plaintiffs argue that Lemonaid was enriched to their detriment because Lemonaid "accepted Plaintiffs' PHI and payments but did not provide the confidentiality they were owed."  (Opp. at 15.)  But Plaintiffs' confidentiality has not been breached.  Plaintiffs do not allege an invasion of privacy claim, and Plaintiff L.V.'s breach of confidence claim fails because she has not alleged an injury.  Thus, Plaintiffs did not suffer any detriment.

## V. CONCLUSION

Defendants respectfully request that the Motion be granted and the TAC dismissed.

Dated: October 4, 2024            SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: _____/s/ Jay T. Ramsey_____
P. CRAIG CARDON
JAY T. RAMSEY
ALYSSA SONES
KEVIN M. MURPHY

*Attorneys for Defendants*
LEMONAID HEALTH INC. and LMND MEDICAL GROUP, INC., d/b/a LEMONAID HEALTH, a California Professional Corporation